**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| Midland Mortgage Corporation,       ) | Civil Action No. 3:12-00244-MBS |
| a South Carolina corporation,       ) | |
|                                     ) | |
|          Plaintiff,       ) | |
| v.                                  ) | |
|                                     ) | |
| Wells Fargo Bank, N.A., a           ) | **ORDER AND OPINION** |
| national banking association,       ) | |
|                                     ) | |
|          Defendant.       ) | |
| _____) | |

Plaintiff Midland Mortgage Company ("Plaintiff") filed this action for damages, alleging state law claims for negligence and negligent misrepresentation against Defendant Wells Fargo Bank, N.A. ("Defendant"). (ECF No. 24, pp. 4-5.) This matter is before the court on Defendant's motions to dismiss and for summary judgment on the claims asserted against it by Plaintiff. (See ECF Nos. 29, 51.) Plaintiff opposes Defendant's motions. (See ECF Nos. 32, 56.) For the reasons set forth below, the court **GRANTS** Defendant's motion for summary judgment as to Plaintiff's claims.

### I.  RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The facts as viewed in the light most favorable to Plaintiff are discussed below.

Plaintiff contracted to make a residential mortgage loan to Brian and Teri Sumsion (the "Borrowers") for the purchase of real property located at 5 Roe Deer Circle, Blythewood, South Carolina 29016. (ECF No. 24, p. 2 ¶ 5.) As a part of the loan approval process, Plaintiff obtained from Defendant a Verification of Deposit ("VOD") to confirm that the Borrowers had sufficient funds in their bank account to pay the required closing costs for the loan. (Id. at ¶ 6.)

1

Specifically, on February 14, 2008, Plaintiff paid Defendant $20.00 to produce a VOD that would be used to verify the funds in the Borrowers' checking account on deposit as of that date. (Id. at ¶ 9.) Plaintiff alleges that it received from Defendant a VOD indicating a balance of $1,578.51 in the Borrowers' checking account. (Id.; see also ECF No. 25.) After receiving Defendant's VOD, the loan sought by the Borrowers from Plaintiff closed on February 25, 2008. (Id. at ¶ 5; see also ECF No. 25-2, p. 4.)

On July 22, 2010, JP Morgan Chase Bank, N.A. ("Chase"), sent correspondence to Plaintiff, stating that the mortgage insurer for the Borrowers' loan, Republic Mortgage Insurance Company ("RMIC"), had rescinded the Borrowers' mortgage insurance coverage. (ECF No. 25-1, p. 1.) RMIC rescinded the mortgage insurance coverage on the Borrowers' loan after an investigation revealed:

> The [B]orrowers did not have sufficient funds with which to pay their required closing costs with ample cash reserves as represented and, in particular, did not have $1,279 on deposit in their account with Wells Fargo Bank as of 2/14/08, their actual balance as of that date being $0; the document purporting to be a Verification of Deposit form as provided by Wells Fargo Bank is a false document containing fictitious information; the [B]orrowers were not in regular receipt of combined income at the represented rate of $7,872 per month, their actual combined income at the time of this transaction being no more than $5,853 per month; and, in view of the foregoing, the [B]orrowers' true qualifying ratios were not as had been represented in their application for this loan, nor were they within the limits permitted by RMIC for insurance purposes.

(ECF No. 25-1, p. 2.) On August 27, 2010, Plaintiff contacted Defendant to request a Re-verification of the VOD ("re-VOD") regarding the amount the Borrowers had in their account with Defendant as of February 14, 2008. (ECF No. 25-3, pp. 1-2.) Defendant responded on September 1, 2010 with a re-VOD confirming that the original VOD, showing a balance of $1,578.51, was correct. (ECF No. 25-3, p. 4.)

On January 27, 2011, Chase sent Plaintiff another letter, indicating that Chase had received a repurchase/make whole demand letter from Fannie Mae, the investor Chase had sold the Borrowers' loan to.  (ECF No. 24, p. 3 ¶ 12; see also ECF No. 25-2, pp. 1-4.)  In its January 27, 2011 letter, Chase further indicated that Plaintiff would be required to repurchase the Borrowers' loan from Chase if Chase had to repurchase the Borrowers' loan from Fannie Mae.  (Id.)  On May 12, 2011, RMIC sent Chase correspondence indicating that RMIC's decision to rescind the Borrowers' insurance certificate was sufficiently supported by the finding of RMIC's investigators that the Borrowers' cash assets were misrepresented based on a false VOD.  (See Pl.'s Ex. No. 1, p. 2, from Feb. 12, 2013 Mot. Hr'g.) On July 1, 2011, Plaintiff sent Defendant a letter regarding Chase's pending repurchase demand and asked Defendant to either assist in rebutting the allegation that the original VOD was erroneous, or indemnify Plaintiff for damages caused by the original VOD.  (ECF No. 25-4, pp. 1-2.)  Plaintiff alleges that it did not receive a response from Defendant to the July 1, 2011 correspondence.  (ECF No. 24, p. 3 ¶ 14.)

On October 13, 2011, Plaintiff sent a renewed request for a re-VOD of the Borrowers' amount on deposit as of February 14, 2008 to Defendant's Balance Confirmation Services Department.  (ECF No. 25-5, p. 1.)  On October 21, 2011, Defendant's Balance Confirmation Services Department provided Plaintiff with a re-VOD that confirmed that the Borrowers' checking account balance as of February 14, 2008 was $0.  (ECF No. 25-6, p. 2.)  On October 31, 2011, Plaintiff repurchased the Borrowers' loan from Chase for approximately $99,256.00. (ECF No. 24, p. 4 ¶ 17.)

On January 26, 2012, Plaintiff filed a complaint in this court, asserting state law claims against Defendant for negligence and negligent misrepresentation.  (ECF No. 1.)  On March 8, 2012, Defendant answered the complaint denying Plaintiff's claims.  (ECF No. 17.)  On March

28, 2012, Plaintiff filed a motion to amend the complaint to correct inaccuracies in the descriptions of the parties in the pleading. (ECF No. 21.) The court granted Plaintiff's motion to amend the complaint on March 29, 2012, and Plaintiff's amended complaint was filed on that same date. (ECF Nos. 23, 24.) Defendant answered the amended complaint denying Plaintiff's claims on April 12, 2012. (ECF No. 28.)

On April 24, 2012, Defendant filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 29.) Plaintiff filed opposition to Defendant's motion to dismiss on May 11, 2012, to which Defendant filed a reply in support of dismissal on May 21, 2012. (ECF Nos. 32, 33.) On September 19, 2012, Defendant filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56. (ECF No. 51.) Plaintiff filed opposition to Defendant's motion for summary judgment on October 16, 2012, to which Defendant filed a reply in support of summary judgment on October 19, 2012. (ECF Nos. 56, 59.)

## II.    LEGAL STANDARD

A.    Summary Judgment Generally

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248–49 (1986). A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party. Newport News Holdings Corp. v. Virtual City Vision, 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990). The non-moving party may not oppose a motion for summary judgment with mere allegations or denials of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Anderson, 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995). A party cannot create a genuine issue of material fact solely with conclusions in his or her own affidavit or deposition that are not based on personal knowledge. See Latif v. The Community College of Baltimore, No. 08-2023, 2009 WL 4643890, at *2 (4th Cir. Dec. 9, 2009).

B.    Dismissal for Failure to State a Claim Generally

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support her claim and would entitle her to relief. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999); Mylan Labs., Inc., 7 F.3d at 1134. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556

5

U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The court must treat factual allegations of the nonmoving party as true. Estate Constr. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 217-18 (4th Cir. 1994).

C.      State Law Claim for Negligence

To assert direct liability based on a negligence claim in South Carolina, a plaintiff must show that (1) defendants owed him a duty of care; (2) defendants breached this duty by a negligent act or omission; (3) defendants' breach was the proximate cause of their injuries; and (4) he suffered injury or damages. Dorrell v. S.C. Dep't of Transp., 605 S.E.2d 12, 15 (S.C. 2004) (citation omitted). The duty of care is that standard of conduct the law requires of an actor in order to protect others against the risk of harm from his actions. Snow v. City of Columbia, 409 S.E.2d 797, 803 (S.C. Ct. App. 1991). It embodies the principle that the plaintiff should not be called to suffer a harm to his person or property which is foreseeable and which can be avoided by the defendant's exercise of reasonable care. Id. "Whether the law recognizes a particular duty is an issue of law to be determined by the court." Jackson v. Swordfish Inv., L.L.C., 620 S.E.2d 54, 56 (S.C. 2005) (citation omitted). Whether a defendant breached its duty of care is a question of fact. See Dorrell, 605 S.E.2d at 18; McVey v. Whittington, 151 S.E.2d 92, 96 (S.C. 1966).

Negligence is not actionable unless it is the proximate cause of the injury. Bishop v. S.C. Dep't of Mental Health, 502 S.E.2d 78, 83 (S.C. 1998). Proximate cause requires proof of: (1) causation-in-fact, and (2) legal cause. Bramlette v. Charter–Medical–Columbia, 393 S.E.2d 914, 916 (S.C. 1990). Causation-in-fact is proved by establishing the injury would not have occurred "but for" the defendant's negligence, and legal cause is proved by establishing foreseeability. Id.

Although foreseeability of some injury from an act or omission is a prerequisite to establishing proximate cause, the plaintiff need not prove that the actor should have contemplated the particular event which occurred.  See, e.g., Greenville Mem'l Auditorium v. Martin, 391 S.E.2d 546 (S.C. 1990); Young v. Tide Craft, Inc., 242 S.E.2d 671 (S.C. 1978); Stone v. Bethea, 161 S.E.2d 171 (S.C. 1968); Kennedy v. Carter, 153 S.E.2d 312 (S.C. 1967).  The defendant may be held liable for anything which appears to have been a natural and probable consequence of his negligence.  Greenville Mem'l Auditorium, 391 S.E.2d at 547-48.  A plaintiff therefore proves legal cause by establishing the injury in question occurred as a natural and probable consequence of the defendant's negligence.  Bramlett, 393 S.E.2d at 916.  Normally, proximate cause is a question of fact for the jury, and it may be proved by direct or circumstantial evidence.  Player v. Thompson, 193 S.E.2d 531, 533 (S.C. 1972).

D.     State Law Claim for Negligent Misrepresentation

To establish liability for negligent misrepresentation, a plaintiff must show (1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the representation; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance upon the representation.  AMA Mgmt. Corp. v. Strasburger, 420 S.E.2d 868, 874 (S.C. Ct. App. 1992).  The recovery of damages may be predicated upon a negligently-made false statement where a party suffers either injury or loss as a consequence of relying upon the misrepresentation.  Winburn v. Ins. Co. of N.Am., 339 S.E.2d 142, 146 (S.C. Ct. App. 1985) (citation omitted).  A duty to exercise reasonable care in giving information exists when the defendant has a pecuniary interest in the transaction.  Id.

"[I]f the defendant has a pecuniary interest in making the statement and he possesses expertise or special knowledge that would ordinarily make it reasonable for another to rely on his judgment or ability to make careful enquiry, the law places on him a duty of care with respect to representations made to plaintiff." AMA Mgmt. Corp., 420 S.E.2d at 874. "The fact that the information is given in the course of the defendant's business, profession or employment is a sufficient indication that he has a pecuniary interest in it, even though he receives no consideration for it at the time." Winburn, 339 S.E.2d at 146-47 (citation omitted).

"The duty of care is not a duty to take every possible care, still less is it a duty to be right; it is the familiar duty to exercise that care a reasonable man would take in the circumstances." AMA Mgmt. Corp., 420 S.E.2d at 874 (citations omitted). "There is no liability where information is furnished with a clear understanding that the defendant assumes no liability for its accuracy." Id. "Moreover, the plaintiff as part of his case must show that his reliance on the misrepresentation was reasonable." Id. "There is no liability for casual statements, representations as to matters of law, or matters which plaintiff could ascertain on his own in the exercise of due diligence." Id.

"The right to rely must be determined in light of the representee's duty to use reasonable prudence and diligence under the circumstances." Florentine Corp., Inc. v. PEDA I, Inc., 339 S.E.2d 112, 114 (S.C. 1985). "The determination of what constitutes reasonable diligence and prudence must be made on a case by case basis." Id. "Various circumstances which will be considered include the form and materiality of the representation; the respective age, experience, intelligence and mental and physical conditions of the parties; and the relations and respective knowledge and means of knowledge of the parties." Id. "Where there is no confidential or fiduciary relationship and an arm's length transaction between mature, educated people is

8

involved, there is no right to rely." Id. "This is especially true in circumstances where one should have utilized precaution and protection to safeguard his interests." Id.

E.     The Economic Loss Rule

The economic loss rule provides that where a buyer's expectations in a sale are frustrated because the product does not work properly, the buyer's remedies are limited to those prescribed by the law of contract. Palmetto Linen Serv., Inc. v. U.N.X., Inc., 205 F.3d 126, 128 (4th Cir. 2000) (citing Kennedy v. Columbia Lumber and Mfg. Co., Inc., 384 S.E.2d 730, 736 (S.C. 1989)); Eaton Corp. v. Trane Carolina Plains, 350 F. Supp. 2d 699, 701 (D.S.C. 2004). "Most fundamentally, the economic loss rule distinguishes between transactions involving the sale of goods, where contract law protects economic expectations, and transactions involving the sale of defective products to individual consumers, whose injuries are traditionally remedied by the law of torts." Myrtle Beach Pipeline Corp. v. Emerson Elec. Co., 843 F. Supp. 1027, 1049 (D.S.C. 1993).

The economic loss rule bars a negligence action "where duties are created solely by contract." Kennedy, 384 S.E.2d at 737. Where there is a special relationship between the parties that is independent of the contract, however, there exists a duty of care, the breach of which, will support a tort action. Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc., 463 S.E.2d 85, 88-9 (S.C. 1995). For example, South Carolina courts have permitted negligence actions to proceed against engineers and lawyers based on their professional duties to plaintiffs. Id.

### III.    ANALYSIS

Defendant asserts that it is entitled to dismissal and/or summary judgment on the claims against it for negligence and negligent misrepresentation because Plaintiff fails to establish the following: (1) Defendant owed Plaintiff a duty of care; (2) Defendant breached the duty of care owed to Plaintiff by providing an inaccurate VOD; (3) Defendant's breach was the proximate cause of Plaintiff's injuries; and (4) Plaintiff reasonably relied on the VOD.

A.    The Arguments of the Parties

   1.    *A duty of care:*

Defendant argues that the VOD did not create a duty of care to Plaintiff because the document contained a disclaimer, warning Plaintiff that Defendant did not "represent and warrant that the information [in the VOD] is complete and accurate."  (See ECF No. 25.)  In support of this argument, Defendant contends that a bank generally lacks a duty of care to a customer.  (ECF No. 29-1, p. 4 (citing Regions Bank v. Schmauch, 582 S.E.2d 432, 443-45 (S.C. Ct. App. 2003) (court finding that experienced businesswoman was not in a vulnerable position when guaranteeing a loan and that the bank owed no special duty of care)).)  Defendant further contends that the VOD did not alter the parties' relationship in such a way as to create a duty of care to Plaintiff.  (ECF No. 51-1, p. 5 (citing Tommy L. Griffin Plumbing., 463 S.E.2d at 88 ("When, however, there is a special relationship between the alleged tortfeasor and the injured party not arising in contract, the breach of that duty of care will support a tort action.")).)  In this regard, Defendant asserts that the transaction resulting in the creation of the VOD was between two sophisticated corporate entities and a special duty of care does not arise in the context of such an arm's length transaction.  (ECF No. 33, p. 2.)  Moreover, the VOD was the embodiment

of the contractual agreement between the parties and the document does not support a finding of an extra-contractual duty by Defendant to Plaintiff. (Id. at 3.) Based on the foregoing, Defendant argues that claims for negligence and negligent misrepresentation fail as a matter of law. (Id.)

Plaintiff argues that it was owed a duty by Defendant because Defendant generated the VOD with the understanding that Plaintiff would use the VOD to originate a mortgage loan. (ECF No. 32, pp. 3-4 (citing Serino v. Dun & Bradstreet, Inc., 267 F. Supp. 396, 398 (D.S.C. 1967)[1]).) In this regard, Plaintiff asserts that Defendant was aware that Plaintiff would use the VOD in conjunction with the Borrowers' loan because Defendant requires that a VOD be obtained by a lender for each loan it purchases. (ECF No. 56, p. 10 (referencing ECF Nos. 56-1 & 56-2, p. 2 (noting a VOD as "Required Documentation")).) Plaintiff further asserts that Defendant was well aware that should its VOD prove inaccurate, Plaintiff would have to repurchase or indemnify its investor regarding the Borrowers' loan because Defendant requires repurchase and/or indemnification in such instances. (Id. (see ECF No. 56-3, p. 4 ¶ 305.03(e) (defining an "Unmarketable Loan" which in turn constitutes an "Event of Default" requiring repurchase and/or indemnification under ¶ 305.01)).) As support for its assertions, Plaintiff references cases in which courts have found that a duty to use due care arises when a defendant

---

[1] In Serino, the court stated:

> In the case at bar defendant knew that its reports about plaintiff would probably be acted upon by some of its subscribers in matters of importance; and it should have reasonably foreseen that plaintiff would likely suffer financial loss or damage if defendant published false or erroneous information asserting that she was a partner in her son's business. Even though there was no privity or contractual relationship between plaintiff and defendant, nevertheless, when the latter undertook to publish credit information about her, it was encumbent upon it to exercise due care in obtaining and publishing credit information about her, and justice demands the imposition of liability for damages resulting proximately from its negligent breach of such duty.

Serino, 267 F. Supp. at 398.

knows or should know that its reports will be relied upon in matters of importance. (Id. (citing Private Mortg. Inv. Servs., Inc. v. Hotel & Club Assocs., Inc., 296 F.3d 308, 314-15 (4th Cir. 2002); Serino v. Dun & Bradstreet, Inc., 267 F. Supp. 396 (D.S.C. 1967); S.C. State Ports Auth. v. Booz-Allen & Hamilton, Inc., 346 S.E.2d 324, 326 (S.C. 1986)).)

Plaintiff further argues that Defendant created a duty of due care with regard to the VOD when it voluntarily undertook to provide that service to Plaintiff. (ECF No. 32 at 4 (citing Sherer v. James, 351 S.E.2d 148, 150 (S.C. 1986) ("At common law, when there is no duty to act but an act is voluntarily undertaken, the actor assumes a duty to use due care.")).) In this regard, Plaintiff asserts that this duty arises because Defendant (1) had exclusive knowledge of the amount that the Borrowers had on account with it at the time of origination, (2) knew that Plaintiff had absolutely no legal means of independently verifying that amount, and (3) was aware of the consequences of providing an inaccurate VOD. (ECF No. 56 at 10-11.) Moreover, the duty to provide an accurate VOD is not excused by a boilerplate disclaimer of reliance. (Id. at 6 (citing Slack v. James, 614 S.E.2d 636, 641 (S.C. 2005) ("A general non-reliance clause, just as a merger clause, does not prevent one from proceeding on tort theories of negligent misrepresentation and fraud.")).)

    2.    *Breach of the duty of care:*

Defendant argues that even if it owed a duty to Plaintiff based on the delivery the VOD, Plaintiff has still failed to make an affirmative showing that Defendant did not act with due care in its issuance of the VOD. (ECF No. 51-1, p. 7.) In this regard, Defendant contends that the evidence in the record does not show that it failed to follow any internal policies and procedures in the issuance of the VOD or acted without the necessary requirement of due care. (Id.)

Plaintiff asserts that it is an industry standard that a correct VOD be provided when ordered because the entire mortgage industry relies upon the accuracy of VODs. (ECF No. 56, p. 11.) Therefore, by issuing an erroneous VOD, Defendant violated industry standard and did not use the amount of care required by the duty owed to Plaintiff. (Id.)

   *3.     Proximate causation:*

Defendant argues that the information in the VOD did not proximately cause any of the injuries suffered by Plaintiff. (ECF No. 29-1, p. 5.) In support of this argument, Defendant asserts that "the purpose of the VOD was to establish that the [B]orrowers had in their possession sufficient funds to pay the closing costs of the loan." (Id.) Defendant further asserts that the purpose of the VOD was unrelated to "whether or not the [B]orrowers would be able to make future payments under the loan." (Id. at 5-6.) As such, Defendant contends that the VOD was not the proximate cause of any alleged injury to Plaintiff because Plaintiff's injury resulted from the Borrowers' failure to make payments on their loan. (Id. at 6.) Defendant further contends that the failure of the Borrowers to pay their loan would have happened regardless of the balance in their checking account on February 14, 2008. (Id.) Therefore, Defendant concludes that Plaintiff is unable to establish that its injuries were proximately caused by Defendant's VOD. (Id.)

Defendant also argues that Plaintiff's alleged injury is not foreseeable. (Id.) In this regard, Defendant argues that the only foreseeable loss arising from an erroneous VOD is the damages that flowed from causing the loan to not close. (Id.) Because the loan did close, the foreseeability of any further loss closed as well. (Id.)

In response to Defendant's arguments on proximate cause, Plaintiff alleges that

Defendant misapprehends the allegations of damage caused by the inaccurate VOD. (ECF No. 32, p. 7.) Plaintiff contends that it was damaged by the inaccurate VOD because it was contractually obligated to repurchase the Borrowers' loan that originated in reliance upon the inaccurate VOD, not because the Borrowers ultimately defaulted on the loan or that the loan was foreclosed upon. (Id. at 7-8.) More specifically, when RMIC discovered the defect in the VOD, it was entitled to rescind mortgage insurance coverage on the Borrowers' loan and when that rescission occurred, Plaintiff became contractually obligated to repurchase the loan from Chase. (Id. at 8; see ECF Nos 25-1, 25-2.) Based on the foregoing, Plaintiff argues that proximate cause is established because (1) but for the receipt of Defendant's inaccurate VOD, Plaintiff would not have originated the Borrowers' loan; and (2) Plaintiff incurred loss when RMIC discovered the defect, exercised its right to rescind coverage thereby resulting in Chase's exercise of its right to demand repurchase from Plaintiff. (Id. at 9.)

*4.     Justifiable reliance:*

Defendant argues that Plaintiff did not have any reasonable justification to rely on the contents of the VOD. (ECF No. 29-1, p. 8.) In support of this argument, Defendant asserts that Plaintiff should not have relied on the VOD because the document clearly contained a disclaimer, stating that Defendant "does not represent and warrant that the information [in the VOD] is complete and accurate." (Id. (citing ECF No. 25).) The VOD further requires the recipient to agree "that it will not disclose this information [in the VOD] to any third party" and "[t]he information [in the VOD] is subject to change without notice to the recipient." (ECF No. 25.) Therefore, Defendant argues that the VOD should have been used "merely to verify an account balance previously provided to Plaintiff by the [B]orrowers." (ECF No. 29-1 at 8.) Moreover,

14

Defendant asserts that any argument in support of reasonable reliance by Plaintiff is without merit because it ignores the fact that Plaintiff could have confirmed the balance of the Borrowers' account by asking the Borrowers. (ECF No. 33, p.6 (citing Quail Hill, LLC v. Cnty. of Richland, 692 S.E.2d 499, 508 (S.C. 2010) ("There is no [negligent representation] liability for . . . matters which plaintiff could ascertain on his own in the exercise of due diligence.")).)

Plaintiff contends that it justifiably relied on the VOD because it did not have any other reasonable way to independently verify the Borrowers' amount on deposit in their account with Defendant. (ECF No. 32, p. 11.) In this regard, Plaintiff asserts that it was legally barred from obtaining such information, and Defendant was legally barred from supplying it without the Borrowers' written permission. (Id.) Therefore, Plaintiff argues that Defendant occupied a superior and exclusive position with respect to the knowledge of the truth and accuracy of the account information in the VOD. (Id.) Accordingly, Plaintiff declares that its reliance on the VOD was justified. (Id. (citing O.C. Gruber v. Santee Frozen Foods, Inc., 419 S.E.2d 795, 799-800 (S.C. Ct. App. 1992) ("We hold that reliance can only be justified in these cases if the relationship of the parties is such that the defendant occupies a superior position to the plaintiff with respect to knowledge of the truth of the statement made.")).)

5.     *The economic loss rule:*

Defendant argues that Plaintiff seeks to recover for purely economic loss (i.e., the cost of repurchasing the loan) and pursuing such damages through a tort claim is barred by the economic loss rule. (ECF NO. 51-1, p. 10.) Defendant further asserts that "[a] breach of a duty which arises under the provisions of a contract between the parties must be redressed under contract, and a tort action will not lie." (Id. (citing Tommy L. Griffin Plumbing & Heating Co., 463

S.E.2d at 88).)  Based on the foregoing, Defendant argues that if it owed any duty to Plaintiff, that duty arises out of the contractual, business relationship between the parties, which is defined by the request for and delivery of the VOD.  (Id.)  Accordingly, both of Plaintiff's claims sounding in tort should be summarily dismissed.

Plaintiff asserts that South Carolina case law recognizes tort actions even in instances where damages are purely economic.  (ECF No. 56, p. 3 (citing Tommy L. Griffin Plumbing & Heating Co., 463 S.E.2d at 88) ("The law in South Carolina, however, has long recognized tort actions when the damages are purely economic.").)  Plaintiff further asserts that applying the economic loss rule to the circumstances of this matter would result in a "blurring of the line between recovery in tort and recovery in contract" that the economic loss rule is supposed to address.  (Id.)  Moreover, Defendant's interpretation of the economic loss rule would negate the existence of the cause of action for negligent misrepresentation because any pecuniary transaction in a business context would result in a contract thereby triggering the economic loss rule to bar any tort claims.  (Id. at 4.)  Therefore, Plaintiff argues that the economic loss rule, as referenced in the case law cited by Defendant, was not designed to apply to the facts that arise in this action.  (Id. at 5.)

B.     The Court's Review

To maintain claims against Defendant for negligence and negligent misrepresentation, Plaintiff has to establish a duty of care owed to it by Defendant.  AMA Mgmt. Corp., 420 S.E.2d at 874.  Generally, a bank neither owes a duty of care to customers or non-customers; nor should it be relied on for information regarding the financial condition of others.  See, e.g., Eisenberg v. Wachovia Bank, N.A., 301 F.3d 220, 227 (4th Cir. 2002) (holding that banks do not owe

16

non-customers a duty of care); Regions Bank v. Schmauch, 582 S.E.2d 432, 443-44 (S.C. Ct. App. 2003) ("South Carolina holds the normal relationship between a bank and its customer is one of creditor-debtor and not fiduciary in nature."); Pulliam v. Clark, C/A No. 4:11–03047–RBH, 2012 WL 1835717, at *4 (D.S.C. May 21, 2012) ("In the banking context, South Carolina courts recognize that banks owe "no special duty of care" to ordinary customers, and an individual is not ordinarily entitled to rely on a bank for financial guidance, information regarding potential liabilities flowing from contractual agreements, or for information on the financial condition of others.") (citations omitted).  However, Plaintiff asserts that the bank Defendant in this matter did owe a duty of care regarding the VOD transaction because Defendant possessed knowledge that (1) the VOD was to be relied on by Plaintiff to originate the Borrowers' mortgage loan; (2) Plaintiff would have to repurchase the Borrowers' mortgage loan after selling it to an investor if the VOD was inaccurate; (3) Defendant had exclusive knowledge of the Borrowers' account information at the relevant time in question; and (4) an inaccurate VOD violated industry standards.  (See ECF No. 56, pp. 9-11.)

Upon review, the court is unable to find that the knowledge of the VOD's purpose attributed to Defendant establishes the existence of a duty of care to Plaintiff.  More specifically, the present record does not contain sufficient evidence (i.e., affidavits or deposition testimony) to support the conclusion that Defendant possessed the knowledge attributed to it by Plaintiff.  In this regard, Plaintiff's information regarding Defendant's knowledge is provided mostly through the statements set forth in its brief, without supporting evidence, and such statements are generally not enough to survive summary judgment.  See Fed. R. Civ. P. 56(c); see also Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1358 (4th Cir. 1995) (counsel's statements are not

evidence); Estrella v. Bryant, 682 F.2d 814, 819 (9th Cir. 1982) (legal memoranda are not evidence and do not create issues of fact on a motion for summary judgment); Gans v. Gray, 612 F. Supp. 608, 619 (E.D. Pa. 1985) (mere statements made in counsel's briefs are not evidence for the purpose of supporting or opposing a motion for summary judgment); cf. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (there must be evidence on which a jury could reasonably find for the Plaintiff). Moreover, the authorities cited by Plaintiff - Private Mortgage, Serino, and Booz-Allen - clearly do not impose a duty of care on Defendant under the banking circumstances presented in this case. Based on the foregoing, the court finds that Defendant did not owe a duty to Plaintiff, and thus could not have breached a duty to Plaintiff. Therefore, because Plaintiff cannot show a duty of care and breach of the duty of care, its claims for negligence or negligent misrepresentation cannot survive summary judgment.[2]

Plaintiff's claim for negligent misrepresentation also fails because it did not have a right to rely on the information in the VOD. First, with regard to the document itself, the VOD warned its recipient that the information therein (1) came without any representation or warranty regarding its completeness and accuracy, (2) was subject to change without notice to the

---

[2] As the court finds that Defendant is entitled to summary judgment, it is unnecessary to address Defendant's argument regarding the economic loss rule. The court notes that it has previously declined to apply the economic loss rule to a services contract:

> [T]he question of whether the doctrine even applies to service contracts remains largely unanswered. While the court cannot identify any relevant South Carolina law addressing this issue, numerous other states have held that if the contract is one for services, the economic loss doctrine does not apply, and a negligence claim is permissible. See, e.g., Official Comm. of Unsecured Creditors of Corell Steel v. Fishbein and Co., P.C., 1992 WL 196768, at *5–6 (E.D. Pa. Aug. 10, 1992); Niagara Mohawk Power Corp. v. Stone & Webster Eng'g Corp., 725 F. Supp. 656, 660 (N.D.N.Y. 1989).

Eaton Corp. v. Trane Carolina Plains, 350 F. Supp. 2d 699, 701 (D.S.C. 2004). In this regard, the court has observed that "[i]t is not clear whether South Carolina law would apply the economic loss rule to services contracts such as those between banks and their customers." Simons v. Wal-Mart Stores E., L.P., C/A No. 8:11–03180–JMC, 2013 WL 393998, at *4 n.1 (D.S.C. Jan. 31, 2013).

recipient, and (3) should not be disclosed to any third party.  Second, there is not any evidence that Defendant warrantied the obligations Plaintiff chose to make after its receipt and review of the VOD or advised Plaintiff in any way regarding the usage of the information in the VOD.  See Burwell, 340 S.E.2d at 790 (a bank may be held to a fiduciary duty if it undertakes to advise a depositor as part of services the bank offers).  In this regard, the evidence in the record supports Defendant's assertion that the purchase of the VOD was an arm's length transaction between two sophisticated banking entities.  Moreover, the purchase of the VOD did not alter the relationship between Plaintiff and Defendant such that Defendant had a duty to Plaintiff independent of the agreement to provide the VOD.  See Florentine Corp., 339 S.E.2d at 114 ("Where there is no confidential or fiduciary relationship, and an arm's length transaction between mature, educated people is involved, there is no right to rely.") Therefore, Plaintiff cannot show that it had a right to rely on the information contained in the VOD.

### III.   CONCLUSION

Upon careful consideration of the entire record, the court hereby **GRANTS** Defendant's motion for summary judgment with respect to Plaintiff's claims for negligence and negligent representation.  (ECF No. 51.)  Defendant's motion to dismiss Plaintiff's claims is denied as **MOOT**.  (ECF No. 29.)

**IT IS SO ORDERED**.


/s/Margaret B. Seymour_____
MARGARET B. SEYMOUR
SENIOR UNITED STATES DISTRICT JUDGE

February 25, 2013
Columbia, South Carolina